## SOCIETE ANONYME DES MANUFACTURES DES GLACES ET PRODUITS CHIMIQUES DE SAINT – GOBAIN, CHAUNY & CIREY v. MARZALL, Commissioner of Patents.
### C. A. No. 831–51.
United States District Court
District of Columbia.
May 12, 1952.

Dale A. Bauer and John L. Seymour, New York City, N. D. Parker, Jr., Washington, D. C., for plaintiff.

E. L. Reynolds, Sol., S. William Cochran, Atty., U. S. Patent Office, Washington, D. C., for defendant.

MORRIS, District Judge.

These proceedings are brought by plaintiff pursuant to R.S. § 4915, 35 U.S.C.A. § 63, for a decree that the plaintiff is entitled to letters patent on claims 1, 2, 7, 10, 11, 12, 16, 18, 21, 22, 26, 28, 29, and 33 to 40, inclusive, in application for letters patent filed July 4, 1945, by Roger Emile Lambert, Serial Number 603,206, and which application has been duly assigned to the plaintiff, and a determination that the defendant Commissioner of Patents is authorized to issue letters patent thereon, and for a decree that the plaintiff is further entitled to letters patent on claims 1 to 9, 11, 14, 15, 20 to 27, and 30, inclusive, in application for letters patent filed September 12, 1946, by Pierre Arbeit, Serial Number 696,451, and which application has been duly assigned to the plaintiff, and a determination that the defendant Commissioner of Patents is authorized to issue letters patent thereon. To the complaint, the defendant has answered in effect that the claims in both applications are not patentable in that they do not constitute invention over the prior art, as disclosed by the references cited in the statements of the Primary Examiner and the decisions of the Board of Appeals of the Patent Office, upon which references said claims were rejected and disallowed.

A hearing was had on November 13, 14 and 15, 1951. Voluminous testimony was taken, numerous exhibits introduced, including operating models conforming to the plaintiff's claims and of the more critical references, and also including the exhibition of a motion picture film portraying the interior of a furnace in which the plaintiff's methods were being used. Arguments of counsel were had, and briefs were subsequently filed, the last being filed January 10, 1952. Unfortunately, an intervening court assignment, entailing an unusual volume of current priority matters, has prevented the earlier study and decision in this case.

The claimed inventions here involved both relate to methods and means for the manufacture of glass. For convenience, they will be discussed separately.

### The Lambert Claims

The plaintiff considers that the principle constituting novelty and invention in the claimed Lambert application is representatively set forth in claim No. 10, which reads as follows:

"10. In an electric furnace for the manufacture of glass, a container for the glass mass, electrodes supplying an electric current to the glass mass placed in the melting zone substantially vertically in the central portion of said zone under the lump of the batch materials and penetrating through the bottom of the container, all said electrodes being in contact with the glass bath along at least a part of its height and being remote from the vertical walls of the container."

The references relied upon in rejecting the claim are:

| | | | | |
|---|---|---|---|---|
| Peyches | (A.P.C.) | S.N. 295,028 | Pub. April 27, 1943 |
| Clark | | 1,594,496 | Aug. 3, 1926 |
| Hitner | | 1,827,472 | Oct. 13, 1931 |
| Wadman | | 1,880,541 | Oct. 4, 1932 |
| Wadman | | 1,905,534 | April 25, 1933 |
| Romazzotti | | 2,267,537 | Dec. 23, 1941 |

Perhaps there is no industry in the world which employed from ancient times until an almost recent date the same methods of manufacture as that of making glass. There are three general stages in the process. The first stage is the melting or fusion of the materials out of which the glass is made, which is accomplished by heating the materials to 1200 degrees to 1300 degrees centigrade, at which heat the materials become molten, but with a high viscosity. The next stage is that called "fining" (which is evidently a variant of the common term "refining"), and this is accomplished by raising the temperature of the molten glass to a heat of 1450 degrees centigrade, and its effect, accompanied by foaming, is to get rid of occluded gasses. The third stage in the process is called working or conditioning, and this is accomplished by bringing down the temperature of the mass to about 1100 degrees centigrade so that it may be withdrawn and used by whatever means are employed to shape the glass in the desired form or article. Until fairly recent times, the heating and cooling for the three stages in this process were accomplished by the pot furnace, in which the materials were heated by external means. Such pot furnace was heated or cooled to accomplish the requisite temperature for the different stages of the process. An improvement came about with the use of the tank furnace, generally operated by means of flame introduced into the tank, and then came the introduction of electric heating, used alone, or in combination with flame heating, by means of electrodes introduced into the tank for the purpose of both melting the materials out of which the glass is made and also for the fining of the glass. All of the critical references relied upon in rejection of the claims under consideration relate to this method. The invention here claimed is not different in principle from that of certain of the references in so far as it is a means of introducing heat by electricity into the tank furnace for the purpose of melting the batch of glass-making materials. Its novelty is that the positioning of the electrodes, vertically introduced through the bottom of the tank, and relatively close together, remote from the walls of the tank, and positioned, as

they are, in the molten glass below the batch of materials to be melted, accomplish something that is not accomplished by the electrodes in any of the references, or any combination of them. That something is this: Such electrodes, so positioned, not only introduce the heat, which the other electrodes do, but they create an intense current of hot glass ascending the electrodes from the colder glass in the bottom, which is directed to the under side of the batch of material, causing a melting thereof, with the result that the glass so melted, having a relative cooler temperature than the ascending hot glass, and flowing to the walls of the tank, which are also relatively cooler, descends to the bottom and then ascends along the electrodes, thus forming a continuous and intense current, or pumping action. This accomplishes results which are not and cannot be accomplished by the simple diffusion of electrical heat throughout the mass of the glass in the tank, and that is substantially all that is done by the electrodes in the prior art. It may be accurately said that any heating of the molten glass causes some current, and in this respect the Lambert electrodes are not novel, but that is a far different thing from saying that the intense pumping effect resulting from the convection currents caused by the Lambert positioning of the electrodes is not something novel. That it is useful in the industry is not open to the slightest question; indeed, its results, as abundantly shown by the evidence, are amazing. The very much greater output of glass, with substantially less fuel or power energy, and the resulting economies, are in themselves factors which mark a great development in the industry, but beyond that the graphite electrodes, positioned as the claimed invention contemplates, are not vulnerable to burning while the tank is being initially filled with melted glass before the operation of melting the batch material can begin, nor do such electrodes discolor the molten glass, as has been the experience with electrodes positioned otherwise. The position of the electrodes, which provides for the relative coolness of the walls, is not only a factor necessary to the pumping action of the currents of glass produced, but

is a condition that markedly prevents deterioration of the walls by the flow of hot glass against them. An understanding of the action of the claimed invention and the result, as actually accomplished according to the evidence and demonstrations in this case, is more readily had from a drawing inserted in plaintiff's brief than by written description. A copy of such drawing is, therefore, here reproduced.

### LAMBERT SYSTEM

1. Furnace made of refractory bricks.
2. Glass level.
3. Lump of raw materials in solid state.
4. Upstanding electrodes, remote from the walls, employing monophase A. C. current.
5. Glass currents, drawn from the bottom, heated increasingly as they arise along the electrodes.
6. Jets of hot glass projected from the electrodes against the bottom of the lump, acting to melt, leach, and wear away the lump.
7. Couch of cold, newly formed glass being repulsed toward the sides of the furnace by the currents of hot glass from the electrodes.
8. Cold walls of the furnace.
9. Current of glass sinking as it is chilled by the cold walls and thus completing the circuit set up by the electrodes and adding to the velocity of the jets.

### The Arbeit Claims

The plaintiff presents claim No. 24 as representative of the Arbeit claimed invention:

"24. A glass furnace in which the glass is subjected to the melting, fining and conditioning operations in successive zones of the furnace, means to heat the glass in the fining zone externally above its surface, and electrode heating means penetrating the bottom of the furnace in the fining zone, said electrode means being restricted to a position remote from the walls of the furnace and extending into the lower part of the glass bath only."

674

The references relied upon for rejection are:

| Clark | 1,594,496 | Aug. 3, 1926 |
| Wadman | 1,944,855 | Jan. 23, 1934 |
| Atkinson, et al. | 2,159,361 | May 23, 1939 |
| Ehman, et al. | 2,209,515 | July 30, 1940 |
| Borel | 2,225,616 | Dec. 24, 1940 |
| Ramazzotti | 2,267,537 | Dec. 23, 1941 |

Here the electrodes, similar to those in the Lambert application above discussed, are positioned in that compartment of the tank furnace in which the molten glass, fusion having been accomplished in another compartment of the tank, has moved for the fining stage. The electrodes are positioned in the lower part of the bath and are intended to provide the pumping action, not for the primary function of raising the temperature of the glass to the point necessary for its fining, but only for the purpose, by the circulatory pumping motion, of forcing all of the glass in that compartment to the surface where, by flame heating, it is brought to the necessary temperature of fining. Here, again, the novelty is to be found in utilizing the electric heat through electrodes to produce a pumping action, not to be found or taught in the references relied upon. And here, again, as shown by the evidence, the results have been phenomenal. Again the saving of fuel and electric energy by this process have marked it as an outstanding development. Here the quality of the glass that is produced has been markedly superior in homogeneity, and indeed some types of glass have been made which have not been produced by other methods. It is no novelty to make use of electrodes in the fining process. It is no novelty to make use of electrodes in combination with flame heating. It is novelty to produce the pumping action by electrodes which result, from the positioning of the electrodes, in the claimed invention so as to keep the whole body of the glass mass in movement to the surface where the flame heating can produce results that could not be accomplished otherwise. A better understanding of the action of the claimed invention and its result, as shown by the evidence, can be had from a drawing in plaintiff's brief, copy of which is here reproduced.

ARBEIT SYSTEM

10. Furnace
11. Melting zone, flame heated.
12. Port to admit raw material.
13. Lump being melted.
14. Fining zone.
15. Flame ports in fining zone.
16. Electrodes remote from the walls, restricted to the lower part of the bath, upstanding to establish jets of the cold melted glass from the bottom. (Three phase shown.)
17. Jets of glass, colder than surface glass, arising to the surface.
18. Flame playing on the top of the jets.
19. Bridge wall at end of fining zone.
20. Small throat in bottom of bridge wall.
21. Working (conditioning) zone.
22. Outlet for finished glass.

My conclusion with respect to both the Lambert and the Arbeit claims is that both constitute invention; that the plaintiff is entitled to letters patent, and the Commissioner of Patents should be authorized to issue letters patent thereon.

The numerous other claims in both applications which are in controversy have not been dealt with in this memorandum opinion, it being intended that the conclusion reached with respect to the two typical claims discussed shall be applicable to all of the claims in controversy embodying the principles involved in each of those which have been discussed, or so related thereto as to be allowable to protect the invention involved from infringement by incidental variations. As to any of the claims in controversy not considered to be within such category, determination will be made upon the submission and consideration of proposed findings of fact and conclusions of law.

Counsel will submit such proposed findings of fact and conclusions of law in accordance with this memorandum opinion and a proposed order to carry the decisions here made into effect.